Catron, Ch. J.
delivered the opinion of the court.
The first question presented is, whether the deed of the 17th of August 1819, from Kingsley to Crutcher and Sommerville, in trust for the bank, is void as to other creditors of Kingsley. It is fair upon its face, and was duly registered. It is agreed the facts stated in the hill of exceptions are true. This rests the rights of the parties mainly on Kingsley’s evidence.
He says he owed the hank $5000, borrowed from it. The officers of the bank wished it to be secure, and he wished to secure it, as well as his endorsers on the note, but especially the latter, as they were his friends, and he did not wish them to lose by him. That he preferred securing his bank debts, because others were bound as his sureties.
That he did not intend or wish to defraud any one of his creditors. That said deeds were not made by him for that purpose, referring to both deeds.
The property was to remain in the possession of Kings-ley from the date of the deed, 17th of August 1819, to 1st of September 1820, when, if the debt was not paid, the trustees were authorized to sell.
He further states, that at the time of the execution of the first deed, it was understood between him and the plaintiffs, if any of the property should perish in the using, he should make it as good when the trustees should find it necessary to take possession, as it was at the timo of making the deed.
*548 None of tiie property in the first deed was of a description to be exhausted by the use, being, to a great extent, household goods pertaining to a large tavern, very capable of preservation, but also liable to destruction.
If the deed was untainted with fraud, and valid in its inception, and vested the title of the property in the plaintiffs, then after circumstances could not render it fraudulent and void. Shep. T. 67: 5 Rand. R. 260. After circumstances could only be evidence of the original intent of the parties to hinder and delay the creditors of the grantor, not provided for by the deed.
We recognize the soundness of the argument, that if the deed did in fact hinder and delay the creditors of Kingsley, it is void, no matter what were the intentions of the officers of the bank and the grantor. But this postion can only rest on the fact, that the rproperty was hoi den in trust for Kingsley, and not a creditor, the bank. To rebut such a conclusion, it is proved, that the debt due the bank was much larger than the sum the property produced, or was worth. It was neither illegal or immoral to prefer one, set of creditors to another; especially innocent sureties. The time given Kingsley, (twelve months,) to raise the money, was not unreasonable, and the permitting him to retain possession of the property in the mean time, was the only probable mode of enabling him to conduct a public house to the advantage of himself and creditors. He was keeping the Nashville Inn, a large tavern, and all prospect of gain would have been cut off had his servants and furniture been taken from him. He agreed to pay the discounts on the note during the indulgence, which he did do. During the year, Capt. Kingsley sold a horse, and two or three head of horned cattle, included in the deed, because useless and expensive; but it was not with the assent or with the knowledge of the trustees for the bank, from any thing appearing. After the first of September, 1820, Capt. Kingsley interceded with the officers of the bank, and got *549 further indulgence, to the first of the year 1821, when the property was advertised tor sale, about which time the executions of the creditors were levied upon it, which produced this suit.
The trust, in its creation, seems to us to have been a fair transaction, calculated to answer a fair and legal purpose, by legal means: nor do we see any thing in the manner of carrying it into execution, which should stamp the deed as intended to hinder and delay creditors. Indeed, the nature of the property, and situation of the parties were such, as to preclude a course materially different from that pursued. Truly,' the property might have been holden in possession in fact by the trustees, and sold immediately after the first of September 1820, yet that it would have been more available to the bank, and sureties of Kingsley, is not proved or probable. One tiling however is certain; it at no time was worth within several thousand dollars of the bank debt, and therefore the other creditors had no right to complain. The trust being valid, had there been an overplus the execution creditors could have compelled the trustees, in equity, to apply the fund to the extinguishment of the bank debt, and the residue to discharge the executions, and then the execution creditors could have thrown on the bank all the waste of the fund by permitting Capt. Kingsley to use and dispose of any part of it. Yet in a court of law, the waste and mismanagement of the trust property, can form no subject of enquiry, to the end to reach an overplus, because the deed divested Kingsley of the legal title; and on the equity of redemption, or the overplus, had it been ever so great, the executions could not attach.
For the value of the articles contained in the first deed of trust, the plaintiffs are entitled to a judgment.
We will next examine into the validity of the second deed, made 26th of July 1820.
Amongst some trifling articles of household goods, was mortgaged, to secure the debt, one barrel of whiskey, *550 two barrels of vinegar, one barrel of flour, one barrel of Cogmac brandy, quarter casks oí lenernie, Madeira and Port wines, one barrel of coffee, one barrel of sugar, one hundred pounds of loaf sugar, six .thousand pounds of bacon, four hundred pounds of salted and smoked beef, fifty pounds of candles, twenty cords of wood, seven barrels of corn, and one ton of hay.
To test this deed it is necessary some principles should be stated.
1. If the deed was intended to secure to Kingsley the use of the above named property, and which in its nature was subject to be consumed in the use, and not to appropriate it in part discharge of the $5000 debt, then, as to the consumable articles, it was colorable, and delayed and hindered creditors. Being colorable as to part, it is void as to every article contained in it. Darwin vs. Handley, 3 Yer. R. 502: 5 Johns. Rep. 314: 14 Johns. Rep. 464, and cases cited. The court said, in Darwin vs. Handley, that “ creditors, or those bound as surety for others, cannot be permitted to secure their honest debts on the defendant’s property, and at the same time to cover his remaining all from every othér creditor, with the intent to let the debtor use and exhaust his means of payment, reserving the object secretly intended to be applied to the discharge of the mortgagee’s debt.” A remark that applies itself to this case, quite as strong as it did to that.
2. The court say, in Darwin vs. Handley, the retaining possession by Faris was prima facie fraudulent as if the deed had been absolute upon its face. In that case, it was not stated on the face of the deed, that Faris should retain possession until the trustee saw proper to sell: but the court there also expressed the opinion, “that it would make no difference if it were expressed on the face of the deed that the debtor was to retain possession of the property.”
The circumstances in this case, that the debtor must *551 necessarily have used, and of course consumed, the articles mortgaged, consisting of liquors, provisions, groceries, candles, forage and firewood, and this in the midst of winter, stamps this deed with a character not to be mistaken, as intended to cover the articles in a course of daily and rapid consumption, from seizure by Kingsley’s execution creditors, until he could convert them to his own use, in supplying his house of entertainment. The fact corresponds with the probability; he did so appropriate the property. From the nature and character of the property included in this deed, it was prima facie fraudulent upon its face: and the provision, “that Kingsley should remain in quiet possession and use, so far as respects this trust, of the before recited articles of property, from the date hereof to the said first day of September 1820,” instead of helping the transaction, is the more conclusive of its invalidity. 2 Kent’s Com. 412 to 419.
But this deed is void by its terms. The great portion of the property covered by it, if used, must- have been exhausted. Kingsley, the debtor, so far as respected that trust, reserved the power to use and destroy the fund, and did destroy much the greater part of it; nor had the trustees any right to restrain him, contrary to their explicit covenant, “that he might use the articles.” Of course, the deed was for Kingsley’s benefit; it was a holding in trust for him, not the bank. In such a case we might safely appeal to our perceptions of right and wrong, which are independent of all learning, and declare a deed, neither changing the possession of property, or prohibiting the owner from selling or exhausting it In the use, merely colorable and void, because in fact it had no operation. Authorities are abundant to this effect. 20 Johns. R. 446: 5 Cowan’s R. 566.
The discrepancy between the deeds of August 1819, and January 1820, is worthy of remark. In the former, the trustees covenant, that Kingsley shall remain in the quiet possession and use, so far as respects the trust. *552 And Kingsley covenants with the trustees, “to preserve, , , • , , , , , , keep, and at all times have ready and m good order, the before recited property, to the use aforesaid, and no other. ” The second deed, far from containing any such covenant, when it comes to provide for the possession from January to September, leaves the absolute dominion in the grantor, by covenanting, on the part of the trustees, that Kingsley shall remain in quiet possession, and use the property mortgaged, from the date of the deed to the first of September. The principles asserted in Smith T. vs. Bell and wife, (Mart, and Yerg. Rep. 305,) apply to such a state of facts; always bearing in mind, that the use of this property from its nature, was its destruction; and that this examination has no reference to property of a character not subject to be exhausted by the use.
The court thinks the first deed, from its face and from the circumstances attending its execution, clearly valid; and that the second deed, from its face, was intended to hinder and delay creditors,(and is clearly void. For any property, therefore, covered by this deed, and not contained in the first deed also, the plaintiffs cannot have judgment. The clerk will examine the facts, and render judgment accordingly.
Judgment affirmed.